CLARK v. PICKLER.

Opinion delivered May 4, 1925.

1. APPEAL AND ERROR—CONFLICTING INSTRUCTIONS.—Where appellant requested an instruction which was too favorable to himself, he cannot complain that correct instructions given at appellee's instance were in conflict therewith.

2. SALES—LOSS OF WEIGHT OF COTTON AFTER DELIVERY.—The seller of cotton which was marked "weight guaranteed" was not liable for loss of weight accruing after delivery and acceptance due to exposure to the weather.

3. SALES—JURY QUESTION.—In an action to recover for deficiency in weights of cotton at compress under guaranty of the weights in a contract sale, whether the loss in weight accrued before or after the sale was properly submitted to the jury.

4. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—A verdict of the jury is conclusive on a question of fact as to which the evidence is conflicting.

Appeal from Columbia Circuit Court; L. S. Britt, Judge; affirmed.

T. J. Gaughan, J. E. Gaughan, J. T. Sifford and E. E. Godwin, for appellant.

McKay & Smith, for appellee.

SMITH, J. Appellant purchased from appellee 213 bales of cotton at 36¼ cents per pound, f. o. b. cars at

Taylor, Arkansas, on October 9, 1919. The cotton, at the time of the sale, was located in the gin yard where it had been ginned, 200 yards from the railroad station platform, from which most of the cotton was loaded in the cars. The cotton had been weighed at the gin or in the gin yard prior to the sale, and the invoice executed by appellee to appellant at the time of the sale showed the weight of the cotton to be 108,335 pounds. The cotton had been purchased by appellee on September 20 and dates subsequent thereto.

As soon as the sale was made appellee employed J. W. Blackman to deliver the cotton at the railroad cotton platform at Taylor, Arkansas. Blackman begun hauling the cotton on the day of its purchase and finished hauling it on the 11th of October. Four of the bills of lading for 113 bales of cotton were issued by the railroad company on October 14, and four other bills of lading for the remaining 110 bales of cotton were issued October 17, which was eight days after the sale of the cotton.

The invoice of the cotton, showing the number of bales and the weights thereof, was executed by appellee and delivered by him to L. A. King, the agent of appellant, who purchased the cotton for appellant, and at the same time King gave his personal check to appellee in payment of the cotton at the price which had been agreed upon. King then drew a draft upon appellant for the same amount. There was stamped on the invoice the words "Weights guaranteed," and the invoice was signed by appellee.

The record is silent as to the date the cotton was transported by the railroad company from Taylor, Arkansas, to the compress at Hope, Arkansas. However, before the cotton was shipped from Taylor two bales were stolen, and only 211 bales were delivered at the Hope compress.

This is a suit for loss in weight in the cotton, but appellant gave appellee credit for the two bales stolen, and accepts the gin weights thereof as being correct.

When the cotton reached the Hope compress it was muddy and very wet. The cotton was weighed at the compress at the time of its arrival, and weighed 111,723 pounds. Later the cotton was "reconditioned," that is, the damaged cotton was removed from the bales and it was again weighed, and its weight then was 106,962 pounds. Appellant, by this action, seeks to recover from appellee the difference in the amount of cotton as weighed at Taylor and its weight after it was reconditioned, at the price paid.

Appellant offered testimony to the effect that the meaning of the words "weights guaranteed" meant that the weight of the cotton at the compress should govern, and that any shortage which might then exist would be refunded.

Appellee does not question the meaning of the words "weights guaranteed," and concedes that the compress weights govern, but he contends that he is not responsible for the loss of weights sustained, for the reason that the cotton was damaged by being exposed to the weather, and that it was this exposure which made it necessary to recondition the cotton with the resulting loss in weight.

At the request of appellant the court gave an instruction numbered 1, reading as follows: "The jury are instructed that if you believe from the evidence that plaintiff, Charles Clark, bought from the defendant, Geo. T. Pickler, 211 bales of cotton under a contract between said Clark and Pickler that Pickler would guarantee the weights, and that the words, 'weights guaranteed' meant the weights according to the 'turnout' of the compress to which said cotton should be shipped, and that such cotton was shipped to the compress at Hope, Arkansas, and that the 'turnout' of said compress of such cotton was less than the weights of the cotton on which Clark had made payment, then your verdict will be for the plaintiff for the amount of such difference

at 36¼c per pound, with six per cent. interest per annum from the date of payment for the cotton.''

It is insisted that the instructions given on behalf of appellee are in conflict with this instruction, and that the judgment in appellee's favor should therefore be reversed.

The instructions are in conflict, and this was, of course, error, but it is an error of which appellant cannot complain, for the reason that instruction numbered 1 is more favorable to appellant than it should have been, and those given on behalf of appellee correctly declare the law.

It will be observed that, under the testimony set out above, the instruction in effect directed the jury to return a verdict for appellant for the amount of the loss in weight of the cotton, as this loss of weight is undisputed, and the meaning of the words ''weights guaranteed'' is unquestioned. But the instruction leaves out of account the question of the cause of this loss in weight, and this was the question submitted to the jury in the instructions given at the request of appellee.

These instructions were to the effect that, if the cotton was paid for and delivered at the railroad platform and bills of lading therefor obtained by appellee from the railroad company, there was a delivery and acceptance of the cotton, and on the question of the subsequent damage thereto the court charged the jury as follows:

''You are instructed that if you find from the evidence that the cotton was delivered to the plaintiff at Taylor, Arkansas, in good condition, and that afterwards it was damaged and by reason thereof it lost in weight, as shown by the outturn of the Hope compress, you should find for the defendant.

''You are instructed that the defendant is not liable to the plaintiff for loss in weight which resulted from damages sustained by the cotton after it was delivered to and accepted by the plaintiff. And if you find from the evidence that, after such delivery and acceptance, the

cotton was damaged by reason of exposure to the weather, and for that reason the damaged cotton was removed by the Hope compress, thereby resulting in a loss of weight, then it will be your duty to find for the defendant.''

We think these instructions correctly declare the law, and that there was no error in giving them, even though they conflict with instruction numbered 1 given at the request of appellant, because appellee was not responsible for the damage to the cotton after the delivery thereof at the railroad platform, there being nothing in the contract of sale making him liable for such damage.

The instructions submitted the question of fact when the damage to the cotton accrued, and this was a proper question to submit to the jury.

The testimony on this issue of fact was conflicting. On this question the testimony on behalf of appellant was to the effect that, in the fall of 1919, the rainfall was very heavy, and the cotton had been damaged before it was sold. The testimony on behalf of appellee was to the effect that, while the fall of 1919 was unusually wet, the heavy rains which fell during that season did not begin until after the sale of the cotton, and that prior thereto there had been only showers, and that no rain of any consequence had fallen prior to October 9, the day of the sale.

The jury's verdict is conclusive on the question of fact involved, and, as no prejudicial error was committed in the instructions, the judgment of the court below is affirmed.